ROY CRAWFORD AND JAMES GRATZ, PLAINTIFFS AND APPELLANTS, v. MARY BLAKE GRIFFITH, AS THE DULY APPOINTED QUALIFIED AND ACTING EXECUTRIX OF THE LAST WILL AND TESTAMENT OF G. R. MOSHIER, DECEASED; LESLIE BLAKE AND AGNES ROSE BLAKE, HUSBAND AND WIFE; MON-O-CO OIL CORPORATION, A CORPORATION; I. W. LOVE, AS AN INDIVIDUAL AND ALSO DOING BUSINESS AS I. W. LOVE DRILLING COMPANY; IRVEN M. EITREIM AND PAULINE G. EITREIM, HUSBAND AND WIFE; HAROLD W. EITREIM AND MARGIE V. EITREIM, HUSBAND AND WIFE; CLAIRE I. EITREIM; VIOLE EITREIM; JOHN JACOBSEN AND WILDA JACOBSEN, HUSBAND AND WIFE; GEORGE RANDISH, AND PEARL RANDISH, HUSBAND AND WIFE, DEFENDANTS AND RESPONDENTS.

No. 9984.

Submitted February 29, 1960. Decided April 13, 1960.

351 Pac. (2d) 223.

Hansen, Jones & Culver, Baker, for appellants.

Clayton Jones, Miles City, argued orally for appellants.

Brown, Sande, Symmes & Forbes, Billings, Young & Martin, Baker, for respondents.

Arthur B. Martin, Baker, argued orally for respondents.

HONORABLE VICTOR H. FALL, District Judge, sitting in place of MR. JUSTICE ANGSTMAN, delivered the Opinion of the Court.

This is an appeal by the plaintiffs from an adverse judgment.

From the record and arguments before the court the following facts may be gleaned: By warranty deed dated July 3, 1945, and acknowledged on July 5, 1945, G. R. Moshier and his wife, Ella Moshier, conveyed Section 8, T. 7 N., R. 61 E., in Fallon County to one James Gratz. The deed bore $4.40 in revenue stamps indicating a consideration of $4,000 or more. It was filed for record on July 28, 1945. The deed contained

the usual covenants of warranty. Also included in the deed was the following:

"Excepting and reserving unto the Grantors, however an undivided one half of all the minerals, including natural gas and oil, in, on or under said lands; it being understood and agreed hereby that grantors reserve to themselves their heirs, successors or assigns the right to all of the minerals including oil and gas in and under the said lands and the right to enter thereon and to use the surface ground or so much thereof as may be necessary for the purpose of exploring for and mining, or otherwise extracting and carrying away the same; the grantors to do the leasing and have control of the said minerals, inclusing [sic] oil and gas, the grantees to receive only one half of whatever royalties there may be realized, therefrom if and when discovery may be made and production had therefrom."

By warranty deed the same James Gratz, a single man, conveyed this same section 8 to one Roy Crawford, a plaintiff herein. This deed was dated and acknowledged on June 18, 1948. It was for a recited consideration of $3,381.85, and recorded July 12, 1948. It recited that the conveyance was "subject * * * to mineral reservations by G. R. Moshier and Ella Moshier, his wife, set forth in the deed from said Moshiers to first party herein, recorded in Book 25 of Deeds, at page 67 in the office of the county clerk and recorder of Fallon County, Montana."

On May 25, 1949, G. R. Moshier and Roy Crawford made an oil and gas lease covering all of section 8 but to whom or what company is not disclosed by the record.

On June 17, 1954, G. R. Moshier died, his wife, Ella, having preceded him in death. By his will he left his mineral interest, if any, in section 8 to one Leslie Blake, his brother-in-law. On October 9, 1954, Leslie Blake entered into an oil and gas lease with the Mon-O-Co Oil Co., and which lease, according to the pleadings, is still in full force and effect. The record does not

disclose what happened to the Moshier and Crawford lease of 1949 but one may surmise that it expired with the passage of time.

There is certainly nothing unusual about any of the foregoing rather prosaic facts concerning the events recited. However it appears that Gratz and Crawford almost of a certainty, and possibly Moshier, did not have an abstract of title either prepared or examined with reference to section 8. The original patent granted in 1923 and, presumably, placed of record reserved the minerals in the north half of section 8 to the United States. One gathers from the testimony that this information first came to light as a result of the examination of title by the Mon-O-Co Oil Company's counsel. Somewhat over a year later plaintiffs Crawford and Gratz filed their action against the defendants praying for a reformation of the deed from Moshier to Gratz by asking that the reservation of minerals to Moshier be stricken from the first deed herein mentioned. Their reasoning seems to be that when Moshier reserved "one-half" of the minerals he thereby reserved 320 mineral acres to himself and conveyed, or at least intended to convey 320 mineral acres to Gratz, his successor in interest. Their reasoning continues that inasmuch as Moshier had only 320 mineral acres which he could convey in the first place that the removal of the reservation from the deed would correct matters and thereby remedy a situation which appellants earnestly argue is a proper subject under the provision of section 17-901, R.C.M.1947, and which reads as follows:

"*When contract may be revised.* When, through fraud or a mutual mistake of the parties, or a mistake of one party, while the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value."

Unfortunately for plaintiffs their rationale of the case can be invoked even more strongly in support of the proposition that they (plaintiffs) secured nothing at all in the way of mineral rights under the deed in question. It is apparent from the face of the reservation that Moshier certainly meant to reserve all the minerals unto himself by adding the rather unusual concluding provision: "The grantors to do the leasing and have control of the said minerals, inclusing [sic] oil and gas, the grantees to receive only one half of whatever royalties there may be realized therefrom if and when discovery may be made and production had therefrom."

As stated, there can be no question as to the intention of Moshier to reserve the mineral interest at the time of the execution of the deed.

As ruled by the district court, under the original deed Gratz received only an in interest in the royalty payable for gas or oil actually produced. He did not receive a mineral interest at all.

Plaintiff's action, brought pursuant to the statute above quoted, is based upon fraud or mutuality of mistake. A careful examination of the record fails to disclose any evidence whatever of fraud. This opinion could be unduly prolonged by a discussion of the elements necessary to constitute fraud, but it is suffice to state that fraud was not proved in the record before us. Rather quite the contrary as both parties litigant at one or more times extol the virtues of Moshier. As to mutuality of mistake, the expression by its terms shows that if plaintiffs are to prevail here they must show by a preponderance of the evidence that at the time the original deed was executed Moshier and Crawford *mutually* misunderstood the matter of the mineral reservation. There is simply no evidence to support this proposition.

It is the duty of the courts, and the intention of the law, that the intent of the parties be enforced as far as possible. The tendency of modern decisions is to disregard tech-

nicalities and to treat all uncertainties in a conveyance as ambiguities subject to be cleared up by resort to the intention of the parties as gathered from the instrument itself, the circumstances attending and leading up to its execution, and the subject matter and the situation of the parties as of that time. 16 Am.Jur., Deeds, § 168, p. 532. In arriving at the expressed intention of the parties the deed will be considered as a whole and all clauses will be taken into consideration. 16 Am.Jur., Deeds, § 170, p. 533.

No error appears in the record. The subject of reformation of a deed, based upon mutuality of mistake, was before this court in the recent case of Voyta v. Clonts, 134 Mont. 156, 328 P.2d 655. We hold that the ruling therein is determinative of the issues here. The plaintiffs having failed to prove a case the judgment is affirmed.

MR. CHIEF JUSTICE HARRISON, MR. JUSTICES ADAIR, CASTLES, and THE HONORABLE FRANK I. HASWELL, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, concur.